

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

November 16, 2018

<u>**VIA ECF**</u>

The Honorable William H. Pauley III
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

     Re:    *United States* v. *John Chambers*, 17 Cr. 396 (WHP)

Dear Judge Pauley:

     The Government respectfully submits this memorandum in advance of the sentencing of defendant John Chambers, scheduled for Tuesday, November 20, 2018, at 3:30 p.m.  For the reasons set forth below, the Government submits that the Court should impose a Guidelines sentence.

**I.**     **The Guidelines Calculations**

     The parties and the United States Probation Office (the "Probation Office") all agree that the appropriate United States Sentencing Guidelines (the "Guidelines" or "U.S.S.G.") range for the four counts of conviction, which are grouped for Guidelines purposes, is calculated pursuant to U.S.S.G. § 2C1.1, according to which the base offense level is 12.  (Presentence Report ("PSR") ¶ 32; Def. Mem. 2).  The parties and the Probation Office also all agree that because the offense involved more than one bribe, a two-level enhancement is warranted, pursuant to U.S.S.G. § 2C1.1(b)(1), and that because the offense involved bribes that were worth at least $6,500 but not more than $15,000, a two-level enhancement is warranted, pursuant to U.S.S.G. §§ 2C1.1(b)(2) and 2B1.1(b)(1)(B).  (PSR ¶¶ 27, 33-34; Def. Mem. 2).

     The Government and the Probation Office also submit that because the defendant was a New York State licensed attorney who abused his position of public trust, in a manner that significant facilitated the commission of the offense, a two-level enhancement is warranted, pursuant to U.S.S.G. § 3B1.3.  (PSR ¶ 37).  The Government also agrees with the Probation

Office that an additional four-level upward adjustment is warranted, pursuant to U.S.S.G. § 2C1.1(b)(3), because the defendant's offense involved a public official in a sensitive position.[1]

The defendant argues that because being an attorney was not a necessary requirement of the role of the defendant in connection with his criminal conduct, a two-level enhancement pursuant to U.S.S.G. § 3B1.3 is unwarranted. (Def. Mem. 3.) The Government disagrees. Although other individuals conducting similar business with the New York City Police Department ("NYPD") License Division were not attorneys, the defendant advertised his services as a lawyer, held himself out as—and indeed was—a licensed attorney, and entered into attorney-client relationships with individuals whom he represented in connection with License Division business. The defendant manifestly was acting as an attorney for clients for which, as further described below, he paid bribes and received beneficial treatment from the License Division. Indeed, in summation at trial defense counsel stressed Chambers's position as an attorney in contrast to lay "expediters," showing how intertwined the charged conduct was with his status and his work as an attorney. Tr. 888 ("[C]ontrast this preeminent attorney with the expediters like Alex Shaya Lichtenstein who exist just by bribes."). Because his position as an attorney contributed significantly to facilitating the commission of the offense, the Government submits that the two-level enhancement for abuse of position of trust applies.

The defendant also argues that because ultimate decisions were not made by the recipient of the bribes, that individual cannot be viewed as a high-level decision-maker, and a four-level enhancement pursuant to U.S.S.G. § 2C1.1(b)(3) is unwarranted. (Def. Mem. 3; *see* PSR at 17-18). However, because the recipient of the bribe was a law enforcement officer, the Government submits that the four-level enhancement applies. *See* U.S.S.G. § 2C1.1 app. n.4(B) ("Examples of a public official who holds a sensitive position include . . . a law enforcement officer.").

As a result, the Government calculates the total offense level as 22. Because the defendant has a Criminal History Category of I, the applicable Guidelines range is 41 to 51 months of imprisonment.

The Probation Office recommends a sentence of 24 months of incarceration, based on its calculation of the Guidelines range as 41 to 51 months. (*See* PSR at 20.) In his sentencing memorandum, the defendant requests that the Court impose a non-incarceratory sentence, based on the factors set forth in Title 18, United States Code, Section 3553(a). (*See* Def. Mem. 4-9). As set forth below, the Government submits that the Court should impose a sentence of incarceration consistent with the Guidelines.

**II.     Discussion**

The Government submits that a meaningful sentence is appropriate to balance all of the factors the Court is required to consider under Section 3553(a) in light of the defendant's serious abuse of his position and corruption of an important governmental process.

---

[1] The Government initially did not contest the defense objection to the application of this adjustment, *see* PSR at 17-18, but upon review of the Probation Office's response to the defense objections in the final presentence report agrees that this adjustment should apply.

Such a sentence would "reflect the seriousness of the offense," "promote respect for the law," and "provide just punishment for the offense." *See* 18 U.S.C. § 3553(a)(2)(A). As the Court is well aware from having presided over the trial in this case, the defendant provided numerous items of value to David Villanueva, an NYPD sergeant who was assigned to the NYPD License Division and who was involved in the approval or denial of gun license applications as well as decisions relating to incidents, in exchange for official acts undertaken by Villanueva for the benefit of the defendant's clients. (PSR ¶¶ 16-19). This is an extremely serious offense that allowed individuals who would not otherwise have been permitted to retain their firearms to continue to do so, interfering with the NYPD's responsibility to protect the public safety in the administration of the City's gun laws.

During the relevant period, the defendant represented individuals in connection with their interactions with the License Division. He marketed himself as the "Top Firearms Licensing Attorney in New York," represented clients in connection with firearms applications, incidents, and appeals processes, and charged his clients thousands of dollars for his services. (PSR ¶ 16). During that time, and over the course of several years, the defendant provided Villanueva with items of value including tickets to Broadway shows and sporting events, sports memorabilia, dinners, cash, and a designer wristwatch, all in exchange for Villanueva's assistance with the defendant's clients who had business pending before the License Division. (PSR ¶ 20). Among other things, Villanueva assisted the defendant's clients by expediting renewals of gun licenses and the resolution of incident investigations, as well as by helping to ensure favorable resolutions for the defendant's clients in incident investigations—when licenses could be suspended or revoked. (PSR ¶ 20).

For example, in 2013, one of the defendant's clients was under investigation by the License Division for an alleged domestic violence incident, which could have resulted in the client losing his gun license. (PSR ¶ 21). The defendant communicated with his client about providing a luxury watch to Villanueva for his assistance in receiving a favorable outcome. (PSR ¶ 21). Ultimately, Villanueva used his position to overrule the recommendation of an initial incident investigator who had recommended revocation of the license in question. (PSR ¶ 21). Overall, dozens of the defendant's clients were assisted by Villanueva in connection with the License Division, including renewal and incident processes. (PSR ¶ 22).

Separately, the defendant also paid Villanueva for assistance with gun license matters in Nassau County. (PSR ¶ 23). Villanueva assisted with at least eight of the defendant's clients, including contacting individuals in Nassau County using NPD letterhead. (PSR ¶ 24). During that time period, the defendant communicated to Villanueva that Villanueva could expect to receive thousands of dollars in cash for such assistance, and in fact the defendant sent cash to Villanueva hidden inside magazines, in addition to providing other items of value as described above. (PSR ¶ 24).

In his sentencing submission, the defendant argues that factors under Section 3553(a) militate in favor of a non-incarceratory sentence, including the defendant's age, lack of criminal history, and challenging personal circumstances, both historically and at present. (*See* PSR ¶¶ 49-55; Def. Mem. 4-9). The Government acknowledges those factors and does not dispute them, and agrees that they merit the Court's attention and careful consideration. The defendant also notes and discusses his status as a transgender individual, a factor entirely appropriate for

the Court to consider as part of its evaluation of the 3553(a) factors.  *See United States* v. *Gutierrez-Romero*, 288 F. App'x 380 (9th Cir. 2008).  The significant written support from friends and family is also laudable and appropriate for consideration.

Nevertheless, such factors necessarily are weighed against the defendant's conduct, which involved bribery of a sworn law enforcement officer, abuse of his position as an attorney, and helping clients to obtain or maintain gun licenses they should not have had—or, at best, should not have had so quickly and without appropriate oversight and evaluation.  Such conduct is alarming, corrosive to the integrity and trust of public institutions and of law enforcement, and potentially very dangerous.

General deterrence is particularly relevant for such conduct.  It is important that any sentence imposed on the defendant send a message to others that the conduct he engaged in here is not to be tolerated.  *See* 18 U.S.C. § 3553(a)(2)(B) (sentencing court shall consider the need "to afford adequate deterrence to criminal conduct").  Other individuals who contemplate committing offenses similar to those of the defendant should know that such crimes are serious and will not be ignored.  The sentence also should reflect the seriousness of the offense, promote respect for the law, and provide just punishment for this very serious offense.  *See* 18 U.S.C. § 3553(a)(1).

The defendant's conduct seriously and intolerably impacted a core public trust—the responsibility of sworn law enforcement officers to exercise their authority honestly and impartially and to make decisions on firearms matters based on the law and the needs and public safety of the city, not on their own personal interests.  That the defendant clothed his actions in the authority afforded by his position as a lawyer and former prosecutor is even more severe, and underscores the need for a sentence that deters such conduct.

### III.   Forfeiture

The Government seeks forfeiture, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461, of $10,000, representing the property which constitutes or is derived from proceeds traceable to the commission of the offenses of conviction.  The Government submits that this amount is a conservative valuation of the amount of money obtained by the defendant from clients in connection with, and traceable to, the bribery and fraud offenses for which he was convicted.  *See United States* v. *Daugerdas*, No. S3 09 Cr. 581 (WHP), 2012 WL 5835203, at *2 (S.D.N.Y. Nov. 7, 2012) (proceeds are "'property that a person would not have but for the criminal offense'" (quoting *United States* v. *Grant*, No. S4 05 Cr. 1192 (NRB), 2008 WL 4376365, at *2 n.1 (S.D.N.Y. Sept. 25, 2008))).

## IV.     Conclusion

For the reasons set forth herein, the Government submits that a Guidelines sentence is appropriate in this case. The Government further requests that the Court order forfeiture in the amount of $10,000.

                                         Respectfully submitted,

                                         GEOFFREY S. BERMAN
                                         United States Attorney

                                    By: _____
                                         Alex Rossmiller / Paul Monteleoni
                                         Assistant United States Attorneys
                                         Southern District of New York
                                         (212) 637-2415 / 2219


Cc:     Steven L. Brounstein, Esq., and Roger Stavis, Esq., *counsel for defendant* (via ECF)