ibk2chaS kjc

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,              New York, N.Y.

4              v.                           17 Cr. 396(WHP)

5    JOHN CHAMBERS,

6              Defendant.

7    ------------------------------x        Sentence

8                                           November 20, 2018
                                            3:30 p.m.
9

10   Before:

11                   HON. WILLIAM H. PAULEY III,

12                                          District Judge

13

14                           APPEARANCES

15
     GEOFFREY S. BERMAN
16        United States Attorney for the
          Southern District of New York
17   BY:  ALEXANDER ROSSMILLER
          PAUL M. MONTELEONI
18        Assistant United States Attorneys

19
     GALLET DREYER & BERKEY, LLP
20        Attorney for Defendant
     BY:  ROGER L. STAVIS
21        JARED FOLEY

22   STEVEN BROUNSTEIN
          Attorney for Defendant
23

24   ALSO PRESENT:

25   MICHAEL BUSCEMI, F.B.I.

ibk2chaS kjc

1              (Case called)

2              THE DEPUTY CLERK:  Appearances.

3              MR. ROSSMILLER:  Good afternoon, your Honor.  Alex

4    Rossmiller and Paul Monteleoni for the government.  With us is

5    New York City Police Officer Michael Buscemi.

6              SPECIAL AGENT BUSCEMI:  F.B.I.

7              MR. ROSSMILLER:  I'm sorry, F.B.I.

8              THE COURT:  Good afternoon to all of you.

9              MR. STAVIS:  On of behalf of Mr. Chambers, Gallet,

10   Dryer & Berkey, by Roger Stavis and Jared Foley.

11             MR. BROUNSTEIN:  Steven Brounstein for Mr. Chambers,

12   as well.  Good afternoon, sir.

13             THE COURT:  Okay, counsel.  Good afternoon.  I note

14   the presence of the defendant, Mr. Chambers, at counsel table.

15             This matter is on for sentencing.  Are the parties

16   ready to proceed?

17             MR. ROSSMILLER:  Yes, your Honor.

18             MR. STAVIS:  Ready for the defense, your Honor.

19             THE COURT:  Mr. Stavis, have you reviewed with your

20   client the presentence investigation report?

21             MR. STAVIS:  Yes, yes.  Mr. Brounstein and I have

22   reviewed the report with our client, yes, your Honor.

23             THE COURT:  Are there any factual matters set forth in

24   the report that you believe warrant modification or correction?

25             MR. BROUNSTEIN:  No, Judge.  I think factually it is

ibk2chaS kjc

1    accurate.

2              THE COURT:  Mr. Rossmiller, are there any factual

3    matters set forth in the report that the government believes

4    warrant modification or correction?

5              MR. ROSSMILLER:  No, your Honor.

6              THE COURT:  Very well.

7              Gentlemen, I have received the parties' submissions.

8    Mr. Stavis or Mr. Brounstein, do you wish to be heard on behalf

9    of your client?

10             MR. STAVIS:  Yes.

11             THE COURT:  If you would take the podium.

12             MR. STAVIS:  I am only going to be here for half a

13   minute.  With the court's indulgence, we have divided up the

14   arguments into the guidelines arguments -- there are a few

15   outstanding guidelines for the court's decision -- and the 3553

16   arguments.  So it was our intention that Mr. Brounstein would

17   address first the guidelines issues, if the court please.

18             THE COURT:  That's fine.  I think we should proceed

19   with the guidelines, and I will rule with respect to the

20   guidelines before I hear your arguments on sentencing on the

21   3553(a) factors.

22             MR. STAVIS:  Thank you, your Honor.

23             THE COURT:  Mr. Brounstein.

24             MR. BROUNSTEIN:  Yes, your Honor.

25             Your Honor, in my submission to the court, I outlined

ibk2chaS kjc

1   a number of objections I had to the guidelines proposed in the

2   presentence report.  Initially, your Honor, I had objected to,

3   just for the record, a two-level enhancement based upon the

4   amount of money involved in the bribery scheme.  Just for the

5   record, your Honor, I withdrew that objection.  I indicated

6   that to the probation department and, upon further reflection,

7   I thought it was really -- it was an inappropriate objection,

8   and I withdrew it.

9          The basis of my objections now, Judge -- and, by the

10  way, just for the record, your Honor, I do believe that the

11  base offense level is a 12, pursuant to 2C1.1; that there is an

12  enhancement, pursuant to 2C1.1(b)(1), which adds an additional

13  two points; and then there is the additional enhancement

14  pursuant to 2C1.1(b)(2) and 2B1.1(b)(1)(B), which leaves a

15  guideline at 16.  So my objections focus on the other two

16  enhancements, Judge.

17         One of them, the first one I want to talk about, is

18  the abuse of position of trust because my client was an

19  attorney.  The probation department and the government agreed

20  that a two-level enhancement is appropriate in that position.

21  My argument to the court and, Judge, basically I made this in

22  my letter, is that the bribery that he was convicted of, the

23  relationship he had with Mr. Villanueva and the manner in which

24  he acted with Mr. Villanueva and the matters he dealt with were

25  not necessarily involved with the fact that he was an attorney.

ibk2chaS kjc

It really dealt with the fact of a personal relationship they

had.

          Now, there were areas in the pistol licensing division

where he did act as an attorney and you had to be an attorney

or you should be an attorney, such as the appeals that were

made to the administrative law judge, such as the numerous

article 78 actions he brought against the City of New York

pistol license division.  Those specifically are attorney

skills and they require special skills.  But at trial we did

learn of other individuals who did what Mr. Chambers did, and

they did that and that role really didn't need an attorney and

I don't think he really used his attorney skills to propagate

that, particularly in his dealings with Mr. Villanueva.

          Based upon that, Judge, I think his special skills

that he had as an attorney, which he no longer has because he

has surrendered his license, he didn't utilize in that

relationship specifically with Mr. Villanueva and.  I know the

government did object to this and Mr. Chambers openly in his

letter indicated to you that there were areas where he, in

dealing with the pistol license division, which really

encompassed his whole practice, he did use his skills as an

attorney.  But I would suggest to the court that, based upon

the testimony of Mr. Villanueva and the nature of the

relationship he had with Mr. Villanueva and the interactions

regarding specific areas, that his special skills as an

ibk2chaS kjc

1    attorney were not used, so I objected to that.

2            My other objection, your Honor, is to the four-level

3    enhancement given to -- based upon the fact that it is claimed

4    that Mr. Villanueva was a public official who had a sensitive

5    position.  Now, initially, Judge -- and I understand the

6    government has the right to do this, and I have no animus -- is

7    that they had agreed with me when I made that objection.  I

8    think that what happened was that they probably read the

9    practice commentary.  And if you read the practice commentary

10   to 2C1.1(b)(3), it does make reference to law enforcement

11   officers specifically.

12           Again, my argument, which relates to the argument I

13   just made to the court is that, number one, the role of

14   Mr. Villanueva in the pistol licensing division was not that of

15   a traditional law enforcement officer who would receive a

16   bribe.  I would argue to the court that that area dealt with

17   the traditional bribery, where you bribe a police officer not

18   to arrest you, you bribe a police officer to turn over certain

19   information, you bribe a law enforcement officer to reveal who

20   informants are.

21           Additionally, is that although Mr. Villanueva did have

22   some say in making determinations as to what -- and we are

23   talking specifically about the incident section, your Honor, is

24   that Mr. Villanueva did not make the ultimate decisions

25   regarding the manner with which Mr. Chambers dealt with him.

ibk2chaS kjc

1    All of those decisions had to be approved and signed off by a

2    supervisor.  So although he did make recommendations, I would

3    suggest to the court that that wouldn't be considered a highly

4    sensitive position because he wasn't the ultimate

5    decision-maker.

6         And, again, if you contrast that to what I just spoke

7    of, the traditional bribe-receiving police officer, that person

8    does make the ultimate decision, the decision of the police

9    officer not to arrest someone because he received a bribe or

10   the decision of the police officer to reveal certain

11   confidential information, that is the decision-making level,

12   because those are the ones that are propagating -- they are the

13   bribe receivers who are propagating the crimes.

14         So based upon that, your Honor, my argument is that

15   those combination of a six-level enhancement to the guidelines

16   should not be applied to this case, and obviously that's within

17   the discretion of the court, as always.

18         THE COURT:  All right.  Thank you.

19         MR. BROUNSTEIN:  Thank you, your Honor.

20         THE COURT:  Mr. Rossmiller, do you want to address the

21   guidelines issues?

22         MR. ROSSMILLER:  Yes, your Honor, I am happy to

23   address the guidelines issues in particular.

24         Your Honor, I will be very brief, subject to any

25   questions from the court.  I think our position was laid out in

ibk2chaS kjc

1    our submission.

2            With respect to the two-point enhancement pursuant to

3    guideline section 3B1.3, that is the abuse of position of

4    trust, the defendant here held himself out as an attorney in

5    connection with these activities and this conduct.  He

6    represented individuals in attorney/client relationships.  We

7    briefed privilege issues before the court, and certainly the

8    arguments and the evidence at trial show that he was acting in

9    his capacity as an attorney with respect to the conduct; and,

10   therefore, for those reasons and the reasons even more

11   thoroughly described in our letter, we do believe that that

12   position of trust facilitated the commission or concealment of

13   the offense as required for that enhancement.

14           With respect to the four-point enhancement or

15   four-level enhancement under guideline section 2C1.1(b)(3),

16   based on the commentary and because the recipient of the bribe

17   was a law enforcement officer, as specifically described, the

18   government submits that that four-point enhancement applies.

19   The commentary states that examples of a public official who

20   hold a sensitive position include, among other things, a law

21   enforcement officer.

22           So subject to any additional questions from the court,

23   that is our view on those two enhancements, your Honor.

24           THE COURT:  All right.  Thank you, Mr. Rossmiller.

25           So the parties differ over two aspects of the

ibk2chaS kjc

1    guidelines calculation.  For the sake of the record at this

2    point, let me make clear what the court's guideline calculation

3    is here.

4          First, as noted by Mr. Brounstein, the base offense

5    level here for these offenses, which are grouped together for

6    guideline calculation purposes, is a 12.  Because the offense

7    involved more than one bribe, a two-level enhancement is

8    warranted under 2C1.1(b)(1).  In addition, because the bribes

9    amounted to more than $6,500, a further two-level enhancement

10   is warranted under 2C1.1(b)(2) and 2B1(b)(1)(B).  The parties

11   differ over the application of section 2C1.1(b)(3), a

12   four-level enhancement for a public official holding a

13   sensitive position.  In this case, it is clear to me that the

14   jury, based on its verdict, and the testimony at trial

15   reflected that Sergeant Villanueva was not just a cog in the

16   machine and that he had considerable influence with the

17   ultimate decision-maker in the case.  His recommendations

18   carried weight.  Accordingly, I find that the four-level

19   enhancement is appropriate in this case.

20         Finally, with respect to the abuse of public trust

21   enhancement of two levels, Mr. Chambers certainly promoted

22   himself throughout his practice as an attorney who was very

23   knowledgeable and focused on pistol license permitting, and

24   there is no question in the court's mind that he used his

25   position as an attorney to obtain clients and, in turn, to get

ibk2chaS kjc

1    permits and to interact in a way, perhaps, that other

2    expediters, mere expediters, could not interact with the pistol

3    license division because they all understood, as Mr. Chambers

4    himself acknowledged in his letter submission to the court,

5    that he was an attorney and if ultimately he was not satisfied

6    and his client was not satisfied with the outcome at the pistol

7    license bureau, that he would commence legal action.  So I find

8    that that two-level enhancement is also appropriate in this

9    case.

10          Now, that yields a total offense level of 22.

11          This is, as the presentence report notes,

12   Mr. Chambers's first criminal conviction.  Accordingly, his

13   criminal history category is a I, and that yields a guideline

14   range in this case of 41 to 51 months of imprisonment.  So this

15   court adopts the guidelines calculation as set forth in the

16   presentence report.

17          With that, Mr. Stavis, I will hear from you on the

18   3553(a) factors.

19          MR. STAVIS:  Your Honor, I have had many occasions to

20   appear before this court over the years, and I know that this

21   court has read and considered every single letter.

22          THE COURT:  And there are a lot of them.

23          MR. STAVIS:  I know that this court read and

24   considered the DOJ guidelines of 2017 for transgender inmates

25   and the new DOJ guidelines of 2018 for transgender inmates.  I

ibk2chaS kjc

1    know that this court has read and studied and absorbed the

2    presentence report, and I know that this court listened very,

3    very carefully to the testimony during the trial.

4           After all of that, your Honor, I think that you know

5    this man.  I don't think that there is any mystery.  I think

6    that John chambers is an open book.  You know about his

7    childhood.  You know about the abuse he suffered.  You know

8    about the foster home that he was in.  You know about his

9    mother.  You know about his relationship.  You know about his

10   reassignment surgery.  You know this man, your Honor.  And

11   talking about the 3553(a) factors, you know, from all of these

12   sources, that he is kind, that he is generous, that he is

13   thoughtful, that he is a loyal and devoted friend, family

14   member, and husband.

15          You will recall as a defense witness, Angelica

16   Villanueva, the wife of Sergeant Villanueva, testified as a

17   defense witness.  The significance of that, your Honor, is -- I

18   understand that this was a bribery case and my client has been

19   convicted, and the decision of the jury was based on the

20   evidence.  But that evidence was that Mr. Chambers had a

21   personal relationship with Sergeant Villanueva, had a

22   friendship with Sergeant Villanueva which transcended business,

23   which transcended bribery, which transcended all of that to

24   such an extent that when Sergeant Villanueva was divorced from

25   his wife, John Chambers continued the friendship with Angie

ibk2chaS kjc

1   Villanueva when she could do absolutely nothing for him.

2   That's the person.  That's John Chambers.

3         Now, I would submit to the court, I know that your

4   Honor hears sentencing arguments routinely and they throw

5   around the word "aberration."  Well, if I use the word

6   aberration, the government is going to say, gee, this is some

7   aberration that lasted over a series of years.  It is not an

8   aberration in that respect, your Honor, but it is an aberration

9   in the respect that of all of the scores of police officers and

10  people in the pistol license division that John Chambers dealt

11  with, there is only one person that is the subject of the

12  bribery charges, and that's Sergeant Villanueva.  I say that,

13  your Honor, not to belabor the point, and my client has been

14  convicted, but it was the crossing of a line.  It wasn't just

15  about the bribes, and your Honor knows that.  Your Honor sat at

16  the trial.  Your Honor heard all of the witnesses.  We

17  presented a defense case.  There was a relationship that

18  transcended the bribery, and John Chambers crossed the line

19  into criminal conduct.  That is a 3553(a) factor that your

20  Honor should consider, the nature and circumstances of the

21  offense and, of course, the history and characteristics of the

22  defendant.

23        As I go through the factors, I'm not going to belabor

24  each and every one, but to afford adequate deterrence, when it

25  comes to deterrence, your Honor, who would willingly trade

ibk2chaS kjc

1   places with John Chambers right now?  He is as low as a person

2   can get.  He is broken.  He is busted.  A lot of his -- your

3   Honor knows this from the trial testimony, a lot of his

4   self-esteem is tied up with his profession.  His clients were

5   more than clients to him.  He was dedicated.  He prided himself

6   on the service and the results that he would get for those

7   clients.  It is gone.  It is all gone.

8           Your Honor, the level 22, at 41 to 51 months, that was

9   found in the presentence report, but then the probation

10  department, after finding that the offense level is 41 to 51

11  months, recommended a sentence of 24 months.  That's a long way

12  from 41 to 51 months.  And they provided as the justification

13  that this is his first offense, which it is, and that he is

14  being disbarred and losing his way of making a living.  They

15  didn't even consider in that portion of the presentence report,

16  I guess I would call it the element in the room, which is that

17  Mr. Chambers is transgender.

18          Your Honor, I was too busy trying the case to pay

19  attention to anything that went on outside of this courtroom

20  during the trial, but after the trial, I did read in various

21  media accounts that the jurors were very troubled in their

22  deliberations about the fact that Mr. Chambers is transgender.

23  And, your Honor, our society has really advanced with regard to

24  transgender people.  We are beginning to recognize their

25  humanity, that they are people.  The government, under the

ibk2chaS kjc

1    3553(a) factors in their submission says it is entirely

2    appropriate for your Honor to consider that Mr. Chambers is

3    transgender.

4            Even the United States Department of Justice, which is

5    advancing with the rest of society, in January of 2017,

6    promulgated regulations, we are not going to just throw people

7    like Mr. Chambers into a prison facility and let him sink or

8    swim.  But there has to be the medical attention, the

9    psychiatric attention, the concern for his physical safety.

10   That is in the DOJ's January 2017 guideline.

11           That changed.  In the new guidelines this year, in the

12   2018 guidelines, under those guidelines they are going to put

13   Susan DeSanto in a woman's prison -- Susan DeSanto being the

14   name that John Chambers was born with and the identity that he

15   was born with, because that's the presumption.  Not going to

16   get any hormone treatments, not going to get anything that he

17   needs.  And your Honor, my client -- I will violate the

18   attorney-client privilege -- my client said to me, Roger, I'm

19   going to die in prison.  He might be right.  I don't know.

20           He has been convicted.  He needs to be punished, yes.

21   We need to have deterrence, yes.  He needs rehabilitation,

22   hopefully.  But does he need to be destroyed by being sent to a

23   prison, your Honor?  Does he need to be sent to a place with

24   absolutely no regard for his personal safety under these new

25   2018 guidelines?  Nothing that he did warrants a punishment, a

ibk2chaS kjc

hellish punishment like that, your Honor.  Nothing.  He is

convicted.  He stands here.  He is ready for sentence.  But

that's not a fair and just sentence.

You know, your Honor, in a sense, my job is easy.  No

matter who my client is, I have to come here before a court and

I have to argue vociferously on behalf of that client whether I

like the client or not.  It's my duty.  It's my obligation.

It's my professionalism.  But it is easy because that's what I

do.  I have to argue.  It's more difficult if you like a

client, but that's my job every day.  My job is easy.  The

court's job here is difficult.  We understand that.  And we

understand how difficult it is.  And we understand the kind of

judge that your Honor is, and we understand that you have read

and absorbed all of the materials and letters that we have sent

to you.

We are asking for a fair and just sentence, and we

know that whatever sentence your Honor imposes is going to be a

fair and just sentence.  We just ask this court that that

sentence, however long it is, not involve sending Mr. Chambers

into the hell hole of United States prison.

Thank you, your Honor.

THE COURT:  Thank you, Mr. Stavis.

Mr. Rossmiller.

MR. ROSSMILLER:  Yes, your Honor.

Your Honor, the government will be relatively brief.

ibk2chaS kjc

1    The court obviously presided over this trial and has our

2    submission.  Most importantly, your Honor, these are very, very

3    serious offenses.  The defendant bribed an NYPD officer in

4    connection with licenses for firearms, and so the government's

5    focus is particularly on the conduct here.  It is serious

6    conduct with potentially dangerous consequences and it involved

7    the betrayal the trust and the corruption of vital government

8    processes which are designed to keep people in New York City

9    safe and to keep a structure for firearms licenses that was

10   violated repeatedly over a lengthy period of time.

11        Defense counsel noted that the defendant bribed one

12   person, and that's true, but he only needed one, your Honor,

13   and it was over the course of a significant period of time.

14   The government doesn't dispute, as we noted in our submission,

15   that there are unusual and significant mitigating

16   circumstances.  There are 3553(a) factors on both sides of the

17   scale in this case, as there are in many cases.  The government

18   has no quarrel with defense arguments about the defendant's

19   challenging past circumstances and about his current support.

20   And as we noted in our papers, as defense counsel noted, that's

21   entirely appropriate for the court to consider and to balance

22   against, again, the is very significant conduct that the court

23   heard about every day at trial that involved such a serious

24   offense and such a violation of trust and a corruption of the

25   process that the license division was supposed to undertake

ibk2chaS kjc

1    every day to keep New Yorkers safe.

2              Thank you, Judge.

3              THE COURT:  Thank you, Mr. Rossmiller.

4              Now, Mr. Stavis, I know from your submissions your

5    client submitted a letter to the court.  I have read it.

6    Notwithstanding that and what you -- what you said in your

7    letter, I ask whether your client would like to address the

8    court at all before sentence is imposed.

9              MR. STAVIS:  Your Honor, it is a very difficult time

10   for my client.  He found it best to express himself in writing.

11             THE COURT:  I understand all of that.  I nevertheless

12   feel constrained to make the request.  That's all.

13   Mr. Brounstein made that clear in his submission accompanying

14   it.

15             MR. STAVIS:  Thank you, your Honor.

16             THE COURT:  All right.  The defendant, John Chambers,

17   comes before this court after a jury in this district found him

18   guilty of four serious crimes against the United States --

19   bribery, conspiracy to commit bribery, honest services fraud,

20   and conspiracy to commit honest services fraud.

21             This court has reviewed the presentence invest report.

22   I adopt the findings of fact in the report as my own and will

23   cause the report to be docketed under seal and filed as part of

24   the record in this case.  I have also reviewed all of the

25   submissions by the parties in connection with this sentencing,

ibk2chaS kjc

1    and I have already ruled on the guidelines calculation.

2             And so this court turns to the 3553(a) factors.  The

3    defendant, John Chambers, is a 64-year-old-attorney who has

4    practiced law in New York for more than 30 years.  He started

5    his legal career as an assistant district attorney in Brooklyn,

6    and thereafter went into private practice, focusing principally

7    on gun licensing issues.

8             With his conviction in this case, in April of 2018, he

9    has lost his license to practice and no longer practices law.

10            Over the last 20 years, his wife, Christina Chambers,

11   has worked as a paralegal at his side in what has become their

12   family business of navigating the process of pistol permit

13   licenses and renewals.  Now, while Mrs. Chambers operates a

14   consulting business, her husband's law practice no longer

15   exists.

16            Obviously, the loss of one's ability to practice law

17   is a significant punishment in and of itself, especially to

18   someone who, by all accounts, devoted himself to his practice

19   to the exclusion of almost everything, else except perhaps his

20   show dog.

21            Now, the crimes for which the jury convicted

22   Mr. Chambers were not momentary lapses.  Rather, they were part

23   and parcel of a business plan to grease the rails for his

24   clients.  His conduct undermined the administration of justice

25   and, in particular, the responsibility of law enforcement

ibk2chaS kjc

1    officers to exercise their authority honestly and impartially

2    and to make decisions on firearms matters based on the law and

3    the public safety interest of the citizenry.

4         Certainly Mr. Chambers understood this as a lawyer,

5    and even more starkly as a former prosecutor.  Such conduct

6    corrodes the integrity and public trust of law enforcement

7    agencies, and who knows who may have received a pistol permit

8    or a renewal of a pistol permit that should not have been

9    issued by the NYPD or the Nassau County Police Department.

10   Indeed, there was testimony at trial that at least one

11   individual with domestic violence charges against him was able

12   to keep his license contrary to the regulations designed to

13   protect the public, and we all know what tragedies can unfold

14   when firearms fall into the wrong hands.  Thus, these crimes

15   are very serious ones with potentially very serious

16   consequences that make the need for general deterrence

17   compelling.  The fact that Mr. Chambers asserts that he

18   exercised great care in selecting his clients and would not

19   have jeopardized public safety is beside the point and no

20   excuse.

21        Now, at the same time, this court acknowledges

22   receiving an outpouring of letters and support for

23   Mr. Chambers.  Many of these letters speak to Mr. Chambers and

24   his wife's generosity to people in need and their desire for

25   friendship and to make the children of other people happy.

ibk2chaS kjc

1    Perhaps that is an understandable impulse on the part of a
2    couple who do not have children of their own, and it is also
3    possible that this generosity led to Mr. Chambers' indictment.
4    As Mr. Stavis acknowledged, there was a personal relationship
5    between Mr. Villanueva and Mr. Chambers, and Mr. Chambers
6    crossed that line.  As a lawyer, Mr. Chambers should have
7    recognized the peril he was placing himself in by showering
8    Sergeant Villanueva and his family were expensive gifts and
9    compromising his judgment as a law enforcement officer.  And
10   Sergeant Villanueva, who is the government's cooperating
11   witness, certainly seems to have benefited from Mr. Chambers'
12   largesse.
13          Now, there is no question in this court's mind that
14   Mr. Chambers had a difficult childhood.  At the same time,
15   though, it certainly was not as bad as so many other defendants
16   who come before this court.  While he dropped out of high
17   school, he managed to pull himself up by his bootstraps,
18   getting a GED and then a college degree, attaining cum laude
19   status while working various jobs, including as a bicycle
20   messenger to make ends meet.
21          Then, in a remarkable exercise of personal resolve and
22   against strong head winds, including his own personal grappling
23   with gender identity issues, he graduated from Temple
24   University Law School, was admitted to the bar, and secured a
25   highly competitive position as an assistant district attorney

ibk2chaS kjc

1    in Kings County.

2            So this all brings us, Mr. Chambers, to an ignominious

3    end to a legal career that started out with so much promise.

4    You undermined the administration of justice and, in doing so,

5    you endangered the public.  For that, you must be punished.  I

6    think you understand that.

7            I find that a guidelines sentence here is

8    significantly more than is necessary in this case to ensure

9    that the ends of the criminal justice system are satisfied.  At

10   the same time, Mr. Chambers, I find that, because of the

11   gravity and the duration of the offenses and your stature as an

12   attorney, a term of imprisonment is warranted in this case, and

13   so it is against this backdrop that I am prepared to impose

14   sentence.  I would ask, sir, that you stand.

15           This is a painful moment.  I presided over the trial.

16   I listened to the evidence.  The jury convicted you and, in my

17   view, their verdict was fully supported by the evidence in the

18   case.

19           It is my judgment, Mr. Chambers, that you be sentenced

20   to a term of 12 months and one day of imprisonment, to be

21   followed by three years of supervised release, subject to all

22   of the standard conditions of supervised release and the

23   following special conditions:

24           First, that you participate in a program of mental

25   health treatment upon your release.  I will require you to bear

ibk2chaS kjc

1      the cost of such a program based on your ability to pay or the

2      availability of third-party payments.  I am imposing, of

3      course, all of the standard conditions of supervised release in

4      the case.  This mental health program will be an outpatient

5      program, and you will be required to take any prescribed

6      medications.  I authorize the release of any available

7      psychological and psychiatric evaluations and reports,

8      including the presentence report, to your healthcare provider.

9              I am not going to impose any fine on you.

10             I am going to impose the mandatory $400 special

11     assessment.

12             I am going to enter the order of forfeiture in this

13     case in the amount of $10,000 unless counsel wish to be heard

14     further on that matter.

15             MR. STAVIS:  No, your Honor.

16             THE COURT:  Very well, then.  I'm going to enter that

17     order as well.

18             And so, Mr. Chambers, this constitutes the sentence of

19     this court.

20             I advise you that you have the right to appeal.  I

21     advise you further that if you cannot afford counsel, counsel

22     will be provided to you free of cost.  Both Mr. Stavis and

23     Mr. Brounstein have done an excellent job both in the pretrial

24     matters, the conduct of the trial in this case, which was

25     thoroughly professional, and in all of their submissions on

ibk2chaS kjc

1   your behalf in connection with sentencing.  And so I am

2   confident, sir, that they will advise you further of your

3   appellate rights.

4            You may be seated.

5            Are there any further application?

6            MR. STAVIS:  Your Honor, we would ask that

7   Mr. Chambers be given an opportunity to surrender to whatever

8   facility.  I usually would ask the court on the judgment and

9   commitment to reflect the choice of a facility.  Because of

10  Mr. Chambers's unique transgender issues, I don't know what

11  that is, and so for that reason and because he is still

12  involved with winding up his life and his practice, I would ask

13  for a March 1 surrender date.  That would give the Bureau of

14  Prisons -- we are heading into holiday season -- from a Bureau

15  of Prisons point of view, the time to make the right decision

16  with perhaps input from counsel and things of that nature, your

17  Honor.

18           THE COURT:  All right.  Does the government have a

19  view?

20           MR. ROSSMILLER:  No objection, your Honor.

21           THE COURT:  I am going to permit Mr. Chambers to

22  surrender voluntarily, but I'm going to require him to do so on

23  February 27, all right?  That's a Wednesday.  Generally, from

24  my experience, the Bureau of Prisons is much more adept at

25  handling things in the middle of the week than on a Friday,

ibk2chaS kjc

1   number one.

2           Number two, I will leave matters about the place of

3   incarceration to further discussions between counsel and the

4   Bureau of Prisons, but I am prepared at this juncture to

5   recommend on the face of the judgment either FC Devens Camp or

6   FC Butner Camp because I am informed that those institutions

7   have medical facilities in immediate proximity and also are

8   capable of administering various hormone treatments.

9           MR. STAVIS:  May we have one moment, your Honor?

10          THE COURT:  Yes.

11          (Counsel confer)

12          THE COURT:  Devens is near Boston and Butner is he

13  near Durham, North Carolina.

14          MR. STAVIS:  We just didn't know if those were male or

15  female facilities, your Honor.  That was our question.

16          THE COURT:  They are male facilities.  Or I will leave

17  it to counsel with the government to discuss this with the

18  Bureau of Prisons.  I will leave it open.  And if something

19  arises, you can make a further application to me.

20          (Counsel confer)

21          MR. STAVIS:  Yes.  I think it is advisable, your

22  Honor, that counsel and the government confer.  My experience

23  is that the Bureau of Prisons, while it is most receptive to

24  judges, but after that, it is receptive to prosecutors, and of

25  course not receptive at all to defense attorneys.

ibk2chaS kjc

1          THE COURT:  I will leave the judgment of conviction

2    bereft of any recommendation as to situs.

3          MR. BROUNSTEIN:  Your Honor, if we find an appropriate

4    facility -- and I think it's probably going to have to be a

5    female facility -- would the court then amend that to make a

6    recommendation if we can reach it with the government?

7          THE COURT:  It won't be necessary if there is an

8    agreement.  Getting amendments to judgments of conviction are

9    generally discouraged.

10         MR. BROUNSTEIN:  I understand, your Honor.

11         THE COURT:  All right.  Is there anything further from

12   the government?

13         MR. ROSSMILLER:  Not from the government, your Honor.

14         THE COURT:  Anything further from the defense?

15         MR. STAVIS:  No, your Honor except to thank the court.

16         THE COURT:  All right.  Very well.  Look, this matter

17   is concluded.  Mr. Chambers, given the resolve that you have

18   shown at other times in your life, I'm confident that you will

19   climb up this wall as well and get your life back together and

20   lead a productive one, and I trust that you will not be coming

21   back before me for any violation of supervised release.

22         THE DEFENDANT:  Thank you, Judge.

23         THE COURT:  All right.  Happy Thanksgiving to all of

24   you.

25         COUNSEL:  Thank you, your Honor.
                              oOo