UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌─────────────────────────────────────┐
│ USDC SDNY                            │
│ DOCUMENT                             │
│ ELECTRONICALLY FILED                 │
│ DOC #:_____                │
│ DATE FILED:___8/5/2024____           │
└─────────────────────────────────────┘
```

JOHN CHAMBERS,

                Petitioner

                -against-

UNITED STATES OF AMERICA,

                Respondent.

21-cv-2056
17-cr-396

OPINION AND ORDER
DENYING PETITION FOR A
WRIT OF HABEAS CORPUS

MARY KAY VYSKOCIL, United States District Judge:

John Chambers, a former attorney who is proceeding *pro se*, has filed a petition to vacate, set aside, or correct his sentence pursuant to 28 U.S.C § 2255 [ECF No. 1 ("Petition")]. Chambers was convicted by a jury of bribery, conspiracy to commit bribery, honest services fraud, and conspiracy to commit honest services fraud. He seeks to vacate his sentence on the ground that his trial counsel was ineffective. For reasons set forth below, the Petition is DENIED.

## I.    BACKGROUND[1]

### A. Petitioner's Indictment, Trial, and Conviction

Petitioner John Chambers was an attorney who represented clients in firearms licensing matters. *See* Tr. at 162:12–14. He liaised with the Pistol License Division ("License Division") of the New York Police Department ("NYPD"), which is tasked with enforcing New York City gun laws. *See* Tr. at 236. He was indicted on charges of (1) bribery in violation of 18 U.S.C. §§ 666 and 2; (2) conspiracy to commit bribery in violation of 18 U.S.C. § 371; (3) honest services fraud in violation of 18 U.S.C. §§ 1343, 1346 and 2; and (4) conspiracy to commit honest services

---

[1] The facts are taken from parties' submissions [17-cr-396, ECF Nos. 114, 118 ("Gov. Opp."), 124; 21-cv-2056, ECF Nos. 1 ("Petition"), 7] and the trial record, including the Indictment [17-cr-396, ECF No. 60 ("Indictment")] and the trial transcript [17-cr-396, ECF Nos. 79, 81, 83, 85, 87, 89 ("Tr.")].

fraud in violation of 18 U.S.C. § 1349 [17-cr-396, ECF No. 60 ("Indictment")].  In the Indictment, the government alleged that Chambers paid numerous bribes over the course of nine years to Sergeant David Villanueva in exchange for "expedited" and "favorable treatment" for his clients. Indictment ¶¶ 1, 3, 5, 7; *see* Tr. at 162:12–14, 330–36, 475–76.

The case proceeded to trial before Judge Pauley.  The government called Inspector Michael Barreto, who was hired as "the commanding officer of the Licensing Division" after a "corruption scandal," which involved Villanueva, was "made public."  Tr. at 42:8–9.  Barreto testified, in pertinent part, that Chambers asked him to "continue" the "preferential treatment" Chambers had received in the past, but Barreto refused.  Tr. at 91:2–6.  On cross-examination, defense counsel elicited testimony about instances in which Chambers successfully appealed Barreto's decisions to deny or revoke licenses for Chambers' clients.  *See* Tr. at 130–37.

The government also called Villanueva as a witness.  Villanueva testified that he had been "arrested for conspiracy to commit bribery, bribery, and the making of false statements to the FBI" and he "pled guilty."  Tr. at 300:22–25.  He testified that he "accepted bribes from . . . . John Chambers," among other people.  Tr. at 301:10–11.

In particular, Villanueva testified that Chambers gave him "Broadway tickets, articles of clothing, . . . two different watches, . . . . money," and "gift cards."  Tr. at 312:19–20.  In exchange, he testified, Villanueva helped close "incident cases" more quickly and, in some cases, with more favorable outcomes for Chambers' clients.  Tr. at 312:24; *see* Tr. at 330:4–12, 361–65.  He testified that he also "help[ed] him with upgrades" and "renewals."  Tr. at 313:4–8.

Villanueva explained that when someone who has a firearms license is arrested or involved certain incidents, the person's license is suspended pending an investigation of the incident, and cases "just [sit] in a drawer for months if not a year."  Tr. at 329:24.  Villanueva testified that

"whatever names [Chambers] gave" him, he "had [his] investigators pull them out and work on them," so that Chambers' clients would not have to endure long suspensions. Tr. at 329:25–330:1; *see* Tr. at 330:4–12.  Villanueva testified about one case in which Chambers' client, a "distributor for high-end watches" who was facing revocation of his firearms license, "had multiple domestic violence" incidents.  Tr. at 363:9–10, 361:24–25.  Villanueva believed revocation was appropriate and there was "no gray area."  Tr. at 367:13–16, 363:18.  Chambers, however, promised Villanueva a very expensive designer watch to restore the client's firearms licenses.  *See* Tr. at 365:4–11, 367:13–368:12.  The government introduced contemporaneous emails that Chambers had sent to Villanueva and the client about the *quid pro quo*.  *See* Tr. at 172:6–11, 176:5–25, 182:18–20. Villanueva testified that "the final outcome was, [he] did exactly what John Chambers wanted," and Chambers gave him the watch.  Tr. at 368:6–12.

Defense counsel called two witnesses, Villanueva's ex-wife, Angelica Villanueva, and Chambers' wife and paralegal, Christina Chambers.  Both witnesses testified that Chambers and Villanueva were friends and exchanged gifts as gestures of friendship.  *See* Tr. at 714:5, 717:5–6, 751:2, 754:11–13.  Central to Chambers' motion, he did not testify.

Defense counsel attempted to introduce evidence of a meeting between Christina Chambers and an undercover officer, which took place after Villanueva was arrested and the corruption scandal at the License Division was publicly reported, and during which Christina Chambers described the ordinary process of applying for a firearms license [17-cr-396, ECF No. 70].  The government moved to preclude the evidence as inadmissible good-act "propensity evidence by way of the transitive property from Ms. Chambers to the defendant."  Tr. at 701:19–20.  The trial judge granted the government's motion to preclude, reasoning that the evidence was not probative of Chambers' conduct during the charged period.  Tr. at 703:3–7.

3

The jury convicted Chambers on all counts [17-cr-396, ECF No. 78]. Judge Pauley then sentenced Chambers to one year and one day of imprisonment, followed by a three-year term of supervised release [17-cr-396, ECF No. 103].

## B. Post-Conviction Proceedings

Chambers appealed. He argued, in particular, that the trial court erred when it precluded the evidence of Christina Chambers and an undercover officer. *See United States v. Chambers*, 800 F. App'x 43, 45–46 (2d Cir. 2020). The Second Circuit Court rejected that argument and affirmed Chambers' conviction and sentence. *See id*.

After his release from prison, Chambers filed a request to terminate his term of supervised release, which request Judge Pauley denied [17-cr-396, ECF Nos. 116, 119]. Chambers then filed the pending habeas petition, pursuant 28 U.S.C. § 2255, to vacate his conviction and sentence on the ground that his trial counsel was ineffective. The case was later reassigned to this Court.

## II.    LEGAL STANDARDS

The Court liberally construes Chambers' *pro se* Petition to raise the strongest arguments it suggests, notwithstanding his background as an attorney. *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 472 (2d Cir. 2006). Section 2255 allows a petitioner who was sentenced by a federal court to collaterally attack his sentence on the ground that it was "imposed in violation of the Constitution."[2] 28 U.S.C. § 2255(a); *see Morales v. United States*, 635 F.3d 39, 42 (2d Cir. 2011). The Supreme Court held in *Strickland v. Washington*, 466 U.S. 668 (1984), that the Sixth Amendment provides criminal defendants with a constitutional right to effective assistance of

---

[2] The text of Section 2255 authorizes a petition by only a "prisoner in custody." 28 U.S.C. § 2255(a). Nevertheless, the Second Circuit has interpreted the statute to permit relief for a petitioner who, "at the time the petition [was] filed," was "under supervised release." *Scanio v. United States*, 37 F.3d 858, 860 (2d Cir. 1994). Chambers was "under supervised release" when he filed this petition, so this Court has "jurisdiction to entertain his claim." *Id*. at 860, 861.

counsel. *See Strickland*, 466 U.S. at 686. As such, a claim of ineffective assistance of counsel "is a basis for relief under section 2255." *Morales*, 635 F.3d at 43.

To succeed on a claim of ineffective assistance of counsel, the petitioner must demonstrate both that (1) his counsel's performance was deficient, and (2) he was actually prejudiced as a result. *See Strickland*, 466 U.S. at 688, 692–93. To meet the first test, the petitioner must show that counsel's performance "falls 'below an objective standard of reasonableness,' as determined by reference to 'prevailing professional norms.'" *Morales*, 635 F.3d at 43 (quoting *Strickland*, 466 U.S. at 688). To meet the second test, the petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

The petitioner must demonstrate that both tests are satisfied. *See Puglisi v. United States*, 586 F.3d 209, 215 (2d Cir. 2009). The "claim must be rejected if [he] fails to meet either the performance prong or the prejudice prong." *Bennett v. United States*, 663 F.3d 71, 85 (2d Cir. 2011). The reviewing court "need not address both prongs if the [petitioner] fails to make a showing on one." *United States v. Baez*, 2022 WL 10219667, at *1 (2d Cir. Oct. 18, 2022).

"The *Strickland* standard is 'highly demanding'" and difficult to satisfy. *Bennett*, 663 F.3d at 85 (quoting *Kimmelman v. Morrison*, 477 U.S. 365, 382 (1986)); *see Lindstadt v. Keane*, 239 F.3d 191, 199 (2d Cir. 2001) (pointing out that "the great majority of habeas petitions that allege constitutionally ineffective counsel" fail). The Supreme Court and the Second Circuit have stressed that, with respect to counsel's performance, a "court must be 'highly deferential' . . . and must operate with a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Lindstadt*, 239 F.3d at 199 (quoting *Strickland*, 466 U.S. at 688–89). In particular, the court must "begin with the premise" that "the challenged actions might

be considered sound trial strategy." *Cullen v. Pinholster*, 563 U.S. 170, 191 (2011) (brackets omitted) (quoting *Strickland*, 466 U.S. at 689).

With respect to prejudice, "[i]t is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 693). Rather, "[c]ounsel's errors must be 'so serious as to deprive the defendant of a fair trial, whose result is reliable.'" *Id.* (*Strickland*, 466 U.S. at 687). As such, the Second Circuit has held that a petitioner cannot show prejudice where there was "overwhelming evidence of guilt adduced at trial." *Strouse v. Leonardo*, 928 F.2d 548, 556 (2d Cir. 1991); *see United States v. Simmons*, 923 F.2d 934, 956 (2d Cir. 1991) (even assuming deficient performance, "given the plethora of evidence [at trial], there is little reason to believe that alternative counsel would have fared any better").

## III.    DISCUSSION

Chambers moves to vacate his conviction and sentence solely on the ground that he was denied effective assistance of counsel in violation of the Sixth Amendment. *See* Petition at 1. His principal argument is that his counsel pressured him not to testify and failed to prepare him to testify. *See* Petition at 5–6. Chambers also argues that his counsel failed to impeach Villanueva with various documents and arguments. *See* Petition at 1–2. The Court denies Chambers' Petition because he cannot satisfy either prong of *Strickland* with respect to any of his arguments.

### A. Chambers Fails To Satisfy *Strickland* with Respect to his Decision Not To Testify.

Chambers contends in his Petition that his counsel prevented him from testifying in his own defense. Chambers asserts that he "acquiesced" and "agreed to not testifying" because he was "intimidat[ed]" by counsel "berating" him. Petition at 5. Specifically, Chambers asserts that counsel was "yelling" and hitting the conference table. Petition at 5. He also asserts that his

6

testimony "would have been a 'train wreck'" because he was "ill-prepared by his Counsels with only a single preparation session." Petition at 6, 5.

In providing effective representation, defense counsel have an "obligation to inform their clients" of their right to testify "and to ensure that clients understand that the ultimate decision belongs to them, not counsel." *Chang v. United States*, 250 F.3d 79, 83 (2d Cir. 2001). Chambers, however, has not carried his burden to demonstrate that counsel fell short of these obligations. Chambers never asserts that counsel failed to inform him of his right to testify, and Chambers' own unsubstantiated assertions that counsel "intimidat[ed]" him, Petition at 5, are not sufficient to establish that counsel deprived Chambers of "the ultimate decision," *Chang*, 250 F.3d at 83; *see id.* at 82; *Brown*, 124 F.3d at 80.

Even assuming that counsel fell short of these obligations, Chambers cannot show that he was prejudiced. *See Brown v. Artuz*, 124 F.3d 73, 81 (2d Cir. 1997). The record establishes that Chambers, a lawyer in his own right, "knew he had the right[] to testify." *Bennett*, 663 F.3d at 86. Judge Pauley specifically advised Chambers that he had the right to testify and asked if it was his own decision not to testify. Chambers stated on the record at the trial that it was "Absolutely" his decision not to testify. Tr. at 767:3.

Some courts in this District have concluded that "[w]here a defendant is not ignorant of his right to testify, but is dissuaded from testifying by his attorney, there is no claim of ineffective assistance of counsel." *Charon v. United States*, 2000 WL 1218372, at *2 (S.D.N.Y. Aug. 28, 2000); *Harris v. United States*, 999 F.Supp. 578, 583 (S.D.N.Y. 1998). Furthermore, the Court must "begin with the premise" that dissuading Chambers from testifying might have been "sound trial strategy." *Cullen*, 563 U.S. at 191 (quoting *Strickland*, 466 U.S. at 689). The Court must also apply a "strong presumption" that counsel did not act unreasonably. *Lindstadt*, 239 F.3d at 199

(quoting *Strickland*, 466 U.S. at 688–89).  As such, the Court is not prepared to conclude that counsel's performance was deficient, even if the Court accepts Chambers' unproven assertion that counsel "yell[ed]" and hit the conference table.  Petition at 5–6.

Chambers also falls far short of demonstrating that his counsel's conduct objectively fell below the range of reasonable assistance in connection with preparing Chambers to testify.  *See Morales*, 635 F.3d at 43; *Lindstadt*, 239 F.3d at 199.  Chambers acknowledges that his counsel did engage him in a "preparation session."  Petition at 5.  There is no support for the proposition that effective assistance requires multiple preparation sessions.

Crucially, Chambers fails to identify any specific testimony he would have given that was reasonably likely to lead to his acquittal.  *See Brown*, 124 F.3d at 81.  That failure is fatal to an ineffective assistance claim based on the allegation that counsel prevented a defendant from testifying at trial.  *See id.* at 80–81.  Indeed, Chambers concedes that, after one preparation session, his testimony would have been a "train wreck."  Petition at 5–6.

This Court has carefully reviewed the trial record and Chambers' Petition.  The government presented a "plethora" of evidence of Chambers' guilt, including not only credible witness testimony, but also contemporaneous emails and other documentary corroboration.  *Simmons*, 923 F.2d at 956.  As such, the Court finds no reasonable likelihood that the jury would have reached a different verdict if Chambers had testified at trial to the assertions contained in his Petition.  *See Simmons*, 923 F.2d at 956.

For all of these reasons, the Court rejects Chambers' principal argument that he received in effective assistance because his counsel pressured him not to testify and failed to sufficiently prepare him to do so.

**B. Chambers' Other Arguments Fail under *Strickland*.**

As noted above, Chambers also asserts that his counsel failed to use various documents and arguments to impeach Villanueva. *See* Petition at 7–21. Chambers stresses that Villanueva was a convicted felon and liar. *See* Petition at 2. He maintains that Villanueva lied about his friendship with Chambers, the items of value Chambers gave him, and numerous details about the operation of the License Division and Chambers' clients. Chambers contends that, because of his counsel's failures, Villanueva's "lies" were never "exposed." Petition at 9.

As an initial matter, the jury heard and rejected Chambers' version of events. Defense counsel called two witnesses who testified that that Chambers and Villanueva were friends and exchanged gifts as gestures of friendship. *See* Tr. at 714:5, 717:5–6, 751:2, 754:11–13. Defense counsel also elicited testimony that Chambers obtained favorable dispositions for his clients in cases that, all parties agree, did not involve bribes. *See* Tr. at 130–37. As explained above, this Court cannot second-guess trial counsel's decisions not to offer various individual documents and arguments that Chambers now contends might have been helpful. *See Cullen*, 563 U.S. at 191. In any event, given the strong evidence of Chambers' guilt, he fails to show that these decisions, individually or collectively, prejudiced him. *See Harrington*, 562 U.S. at 104.

## IV.    CONCLUSION

Chambers' Petition [21-cv-2056, ECF No. 1] is DENIED for the reasons stated above. The Clerk of Court respectfully is requested to close case 21-cv-2056 and to mail a copy of this Opinion and Order to Petitioner.

**SO ORDERED.**

Date:  **August 5, 2024**
       **New York, NY**

**MARY KAY VYSKOCIL**
**United States District Judge**